536 A.2d 447

**COMMONWEALTH of Pennsylvania**

**v.**

**Steven C. WEST, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1987.

Filed Jan. 25, 1988.

Petition for Allowance of Appeal Denied June 27, 1988.

Mark Lovecchio, Williamsport, for appellant.

Kenneth Osokow, Assistant District Attorney, Williamsport, for Com., appellee.

Before WIEAND, TAMILIA and CERCONE, JJ.

WIEAND, Judge:

Steven West was tried non-jury on January 9, 1987 and was found guilty of driving while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(4).[1]  Oral post-tri-

---

1.  Section 3731(a)(4) provides:

    (a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

    . . . . .

    (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

al motions, made immediately following trial, were denied. West was sentenced on March 13, 1987 to pay a fine of seven hundred ($700.00) dollars, plus costs, and to undergo imprisonment for not less than twenty (20) days nor more than one (1) year. On direct appeal, West asserts that the trial court erred by denying his suppression motion. He argues specifically that he should have been permitted to speak with an attorney before deciding whether or not to consent to a breathalyzer test. We find no merit in this contention and affirm the judgment of sentence.

At or about 11:45 p.m. on June 7, 1986, two police officers observed West operating his car in an erratic manner in the City of Williamsport, Lycoming County. The officers followed West and observed that he was exceeding the speed limit and that he failed to stop at a stop sign. The police then stopped West's car and observed beer bottles therein. When West responded belligerently to the stop, he was placed under arrest for disorderly conduct. While being transported to City Hall to be processed on the disorderly conduct charge, one of the officers detected the odor of alcohol on West's breath and informed him that he would be charged also for driving while under the influence of alcohol. It was at this point that West asked to speak to an attorney.

At City Hall, West's *Miranda* rights were read to him, and he again asked to see an attorney. The police asked West for his name and address, and then requested him to perform several sobriety tests. After he had failed to perform these tests satisfactorily, he was again told that he was under arrest for driving under the influence and was requested to submit to a breathalyzer test. West was advised of the consequences of failing to consent to the test,[2] and thereafter he agreed to take a breathalyzer test. The results of the test indicated that his blood alcohol content was .17%.

---

**2.** Upon asking a person under arrest to submit to a breathalyzer test, the police are required to inform that person that refusal to submit to the test will lead to a suspension of his driver's license. See: 75 Pa.C.S. § 1547(b)(2).

Prior to his trial, West filed a motion to suppress both the results of the breathalyzer test and the video tape record compiled by the police [3] on grounds that he had requested an attorney and had been denied an opportunity to obtain one. Following an evidentiary hearing, West's suppression motion was denied. West then filed a motion for reconsideration of the suppression ruling, but, following another evidentiary hearing, the motion was again denied. Now, on direct appeal, West argues that his constitutional right to counsel was violated when his requests to speak with an attorney were not granted prior to his submission to a breathalyzer test. We do not agree.

In *Commonwealth v. Morris,* 218 Pa.Super. 347, 280 A.2d 658 (1971), this Court, in the context of a license suspension for refusal to take a breathalyzer test, was asked to decide whether police must honor a request by a licensee to speak with an attorney prior to consenting to take a breathalyzer test. In holding that such a request need not be honored, this Court stated:

> The action of the secretary in suspending a license for refusal to take a breath test is a civil proceeding. Insofar as this civil proceeding is concerned, the licensee has no right to have an attorney present before deciding whether or not he will take the test. There also is no right, either constitutional or statutory, to be able to call an attorney before deciding whether or not to take the test.

> Since no constitutional or statutory rights were abridged, it follows that appellee had no right to condition his taking the test upon being able to make a telephone call.

*Commonwealth v. Morris, supra,* 218 Pa. at 349, 280 A.2d at 659 (citations and footnotes omitted). See also: *Claybaugh v. Commonwealth, Department of Transportation, Bureau of Traffic Safety,* 86 Pa.Cmwlth. 147, 484 A.2d 196 (1984); *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. Mumma,* 79 Pa.Cmwlth. 108,

**3.** The sequence of events occurring at City Hall had been recorded by the police on video tape.

468 A.2d 891 (1983); *Weitzel Appeal,* 41 Pa.Cmwlth. 235, 400 A.2d 646 (1979). In the instant case, however, the question with which we are faced is whether the right to speak with an attorney attaches when the results of a breathalyzer test will be used as evidence in a criminal proceeding. Our research has disclosed no appellate decisions in this Commonwealth resolving this issue.

Generally, the right to counsel attaches at all critical stages of a criminal proceeding. See: *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978); *Commonwealth v. Barnette,* 445 Pa. 288, 285 A.2d 141 (1971); *Commonwealth v. Ritchey,* 431 Pa. 269, 245 A.2d 446 (1968). This is true under both the Sixth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. *In re Gartley,* 341 Pa.Super. 350, 365, 491 A.2d 851, 859 (1985), *affirmed,* 513 Pa. 429, 521 A.2d 422 (1987). This Court has described a critical stage as follows:

A "critical stage" of the prosecution has been defined as "any stage of the prosecution, formal or informal, in or out of court, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade, supra,* 388 U.S. [218] at 226, 87 S.Ct. [1926] at 1932 [18 L.Ed.2d 1149 (1967)]. The thrust of the right to counsel is the entrustment of the right to a fair trial. Thus, counsel's presence at "critical stages" of the proceedings is mandated because "counsel's legal training and expertise may then be employed on behalf of the accused to observe, discover and prevent possible unfairness or irregularity in ... procedures which may later irreparably prevent a basically fair determination of guilt or innocence." *United States ex rel. Stukes v. Shovlin,* 329 F.Supp. 911, 913, (E.D.Pa.1971), *aff'd,* 464 F.2d 1211 (3d Cir.1972). We are required, therefore, to scrutinize the designated proceeding to determine whether the presence of counsel is necessary to preserve an accused's basic right to a fair trial. This inquiry calls upon us to analyze whether potential substantial prejudice to an accused's rights inheres in the particular proceeding and

whether counsel would have the ability to help avoid that prejudice. *United States v. Wade, supra.*

*Commonwealth v. Shirey,* 333 Pa.Super. 85, 104, 481 A.2d 1314, 1324 (1984). See also: *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *United States ex rel. Stukes v. Shovlin,* 329 F.Supp. 911 (E.D.Pa. 1971), *aff'd,* 464 F.2d 1211 (3d Cir.1972).

The United States Supreme Court in *United States v. Wade, supra,* reasoned that preparatory steps in the gathering of evidence by the prosecution, "such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like," are not "critical stages at which the accused has the right to the presence of his counsel." *Id.* 388 U.S. at 227, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157–1158. Essential to this reasoning was the Court's observation that

> [k]nowledge of the techniques of science and technology is sufficiently available and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

*United States v. Wade, supra* at 227–228, 87 S.Ct. at 1932, 1933, 18 L.Ed.2d at 1158. See also: *Commonwealth v. Stukes,* 435 Pa. 535, 257 A.2d 828 (1969).

Most state courts which have considered this issue have followed the reasoning of the United States Supreme Court and have held that submission to a breathalyzer test is not a critical stage, and, thus, no constitutional right to counsel attaches thereto. See, e.g.: *State v. Cichowski,* 203 Conn. 97, 523 A.2d 503 (1987); *State v. Hoch,* 500 So.2d 597 (Fla.Dist.Ct.App.1986); *State v. Greene,* 128 N.H. 317, 512

A.2d 429 (1986); *State v. Lombard,* 146 Vt. 411, 505 A.2d 1182 (1985); *Wells v. State,* 285 Ark. 9, 684 S.W.2d 248 (1985); *State v. Jones,* 457 A.2d 1116 (Me.1983); *State v. Newton,* 291 Or. 788, 636 P.2d 393 (1981); *Dunn v. Petit,* 120 R.I. 486, 388 A.2d 809 (1978).

In the instant case, we conclude that the presence of an attorney prior to the administration of a breathalyzer test is not necessary to ensure that an accused receives a fair trial on charges of driving while under the influence of alcohol. Such a procedure is not akin to a lineup, which contains the dangers of suggestiveness and misidentification which an attorney's legal training and experience may be able to prevent. Moreover, a breath test is not testimonial in nature so as to make an attorney's presence essential to preserve the accused's privilege against self-incrimination. See: *Commonwealth v. Anderl,* 329 Pa.Super. 69, 477 A.2d 1356 (1984); *Commonwealth v. Benson,* 280 Pa.Super. 20, 421 A.2d 383 (1980). The breathalyzer is mechanical in nature, and the trial of the case presents adequate opportunity to explore and challenge the accuracy of the device used to implement the test, as well as the qualifications of the personnel who conducted it.

Appellant testified that he would have refused to submit to the test if an attorney had advised him not to take it. This argument is unpersuasive. Appellant was advised by the police that refusing to submit to the test would lead to a suspension of his license. Faced with this choice, he consented to the test. This is all that was required by Pennsylvania's implied consent law. 75 Pa.C.S. § 1547. To now require that one accused of drunk driving be given the right to consult with an attorney prior to consenting to a breathalyzer test would frustrate the very purpose of the implied consent law. Delay in administering the test would, because of the evanescent nature of alcohol in the blood stream, serve only to impair the accuracy of the test. See: *Commonwealth v. Speights,* 353 Pa.Super. 258, 509 A.2d 1263 (1986).

Thus, we join those courts which have held that a person arrested on charges of driving while under the influence of alcohol does not have a right under the Sixth Amendment of the United States Constitution to consult an attorney before deciding whether to consent to the administration of a breathalyzer test. Similarly, there is no such right to counsel under Article I, section 9 of the Pennsylvania Constitution.

The judgment of sentence is affirmed.